# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# COLUMBIA DIVISION

| | | |
|---|---|---|
| TERRI BIVENS, | ) | |
| Plaintiff, | ) ) | Case No. 1:13-cv-00161 |
| v. | ) ) | Judge Haynes |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | ) ) ) ) | |
| Defendant. | ) ) | |

## MEMORANDUM

Plaintiff, Terri Bivens, filed this action under 42 U.S.C. § 405(g) against the Defendant Carolyn Colvin, Acting Commissioner of Social Security, seeking judicial review of the Commissioner's denial of her application for supplemental security income ("SSI") under the Social Security Act.

Before the Court is Plaintiff's motion for judgment on the record (Docket Entry No. 18) contending, in sum, that the Administrative Law Judge ("ALJ") erred by failing to consider properly the opinions of Dr. Fatti, Plaintiff's previous treating physician, and Dr. Wilson, an examining physician, and by posing an incomplete hypothetical to the vocational expert. The Commissioner contends that the ALJ's decision is supported by substantial evidence.

The ALJ evaluated Plaintiff's claim for SSI benefits using the sequential evaluation process set forth at 20 C.F.R. § 416.920. (Docket Entry No. 12, Administrative Record at 12-22). At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her amended alleged onset date of December 9, 2010. Id. at 14. At step two, the ALJ determined that Plaintiff had the following severe impairments: reflex sympathetic dystrophy ("RSD") with associated pain

syndrome, history of bilateral tendonitis, decreased visual acuity and obesity. Id. At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments found in 20 C.F.R. Part 404, Subpart P, Appendix 1. Id. at 16. The ALJ did not find any physician who determined that Plaintiff's impairments met or medically equaled a listed impairment, and that physician consultants for the State did not so find. Id. At step four, the ALJ determined that Plaintiff had the residual functional capacity to perform light work with limitations. Id. At step five, the ALJ utilized the testimony of the vocational expert to conclude that Plaintiff is capable of performing past relevant work, or certain other work. Id. at 20-21. The ALJ concluded that Plaintiff was not disabled within the meaning of the Act and was not entitled to disability benefits. Id. at 21. Following this decision, Plaintiff requested a review. Id. at 6-7. Plaintiff's request for review was denied on October 24, 2013. Id. at 1-4.

### A. Review of the Record

On December 20, 2010, Plaintiff Terri Bivens applied for SSI benefits for a disability that began on November 1, 1997. Id. at 110-115. Plaintiff later amended her claim to an alleged disability onset date of December 9, 2010, the protective filing date. (Docket Entry No. 18, Plaintiff's Motion for Judgment on the Record, at 2).

On January 7, 2011, the State requested medical records from Dr. John Fatti, Plaintiff's treating physician in Dewitt, New York, listed on her application. (Docket Entry No. 12, Administrative Record at 198). Dr. Fatti submitted records of office visits dating between October 16, 2001 and July 11, 2006. Id. at 199-226. In the first record, on October 16, 2001, Dr. Fatti noted that Plaintiff was presenting "for follow-up and management of her bilateral wrists." Id. at 225. On

2

this visit, Dr. Fatti opined that Plaintiff "was to continue on no work heavily or repetitively with either hand as she is now (sic)." Id. Dr. Fatti encouraged Plaintiff to contact VESID (Vocational and Educational Services for Individuals with Disabilities, an office of the New York State Education Department). Id. Dr. Fatti consistently listed Plaintiff's diagnosis as "tendonitis," noted Plaintiff's complaints of weakness and pain, and prescribed Tylenol #3 with Codeine. Dr. Fatti also listed work restrictions, if any, on every report. These restrictions were for "partial disability moderate" on September 30, 2002 and was for sedentary work only restrictions as of July 1, 2003. Id. at 218, 222.

On February 23, 2004, Dr. Fatti noted, "[i]n my opinion, because her bilateral upper extremity problems are continuing and worsening and because of her mentally depressed state, in my opinion she is totally temporarily disabled. Again, I am asking for Compensation approval for Psychiatric Evaluation and Treatment!" Id. at 214. This visit was also the first time Dr. Fatti noted depression in Plaintiff, observing, "within about 30 seconds of me talking to her, she was crying and very upset"; "she is at the end of her rope, she is depressed, she is not sure what she is going to do with her life, and this has been an ongoing thing, mentally worsening each time she comes to see us"; "her depression is increasing and she is mentally unable to do things other than the most rudimentary activities of daily living and helping to care for her kids." Id. at 213-214.

On two occasions, October 25, 2004 and February 28, 2005, Plaintiff's difficult with laundry is mentioned and on July 5, 2005, Dr. Fatti noted that Plaintiff's medication is interfering with her ability to perform the activities of daily living. Id. at 209, 207, and 205. On July 11, 2006, Plaintiff's final visit, Dr. Fatti noted that Plaintiff was "quite disturbed, crying, and very frustrated with her entire condition in life" and that "she is very upset." Id. at 201. Dr. Fatti also does not

3

restrict Plaintiff to "totally temporarily disabled" again. On July 11, 2006, the final visit, Plaintiff is diagnosed with "tendonitis elbow" and "Reflex Sympathetic Dystrophy," and given the work restriction "[t]he patient may work with the following restrictions: She is capable of sedentary work only." Id. at 200.

After filing her claim, Plaintiff was evaluated by Dr. Woodrow Wilson on February 22, 2011. Id. at 227-235. In that report, Dr. Wilson observed that Plaintiff had "not been under doctors' care since 2006. She has had no recent evaluation for this and has had no x-rays or MRI scans done recently." Id. at 227. After her physical examination, Dr. Wilson noted that Plaintiff's "[e]lbows, wrists, and hands have full range of motion, but she does complain of pain in her left elbow and left wrist on motion. She seems to be sensitive to touch in those areas." Id. at 228. Dr. Wilson diagnosed Plaintiff with, "1. Chronic arm and shoulder pain with history of RSD, causing chronic pain syndrome. 2. History of heavy tobacco use. 3. Obesity." Id. at 229. Due to RSD, Dr. Wilson imposed several limitations on Plaintiff's ability to work:

> Use of Hands:
> Limited to "frequently": handling, fingering, feeling, push/pulling on the left and right hands
>
> Postural Activities:
> Limited to "frequently": climb stairs and ramps, climb ladders or scaffolds, balance, stoop, kneel, crouch, crawl
>
> Environmental Limitations:
> Limited to "frequently": moving mechanical parts, humidity and wetness, extreme cold and heat, vibrations
> Limited to "occasionally": operating a motor vehicle

Id. at 231-235. Dr. Wilson also imposed sit/stand restrictions of sitting for 20 minutes at a time for 5 hours total in a workday, standing for 20 minutes at a time for 3 hours total in a workday, and walking for 10 minutes at a time for 2 hours total in a workday. Id. at 231.

Two State medical consultants evaluated Plaintiff's medical records. Dr. Frank Pennington conducted an evaluation on April 4, 2011. Id. at 244. Dr. Pennington listed Plaintiff's primary diagnosis as "obesity," secondary diagnosis as "chronic pain, obesity, dec. [visual acuity], and her "other alleged impairments" as "RSD." Id. at 236. Dr. Pennington also listed the following work restrictions:

> Occasionally lift/carry 50 lbs.
> Frequently lift/carry 25 lbs.
> Standing limitation to 6 hours per workday.
> Sitting limitation to 6 hours per workday.
> Climbing a ladder/rope/scaffolds limited to occasionally.
> Limited far acuity.

Id. Dr. Pennington opined that, "the [medical evidence of record] in the file does not support the level of severity of the above stated symptoms. The functional limitations are not consistent throughout the record and therefore the claimant's functional limitations are deemed only partially credible." Id. at 241. Dr. Pennington answered "yes" to the question "are there medical source conclusions about the claimant's limitations or restrictions which are significantly different from your findings?" and explained, "Dr. Wilson's [medical assessment] on 02/22/2011 is to[o] restrictive and not consistent w/ the objective [medical evidence of record] in file." Id. at 242. Plaintiff's claim was denied on April 6, 2011. After that denial, a second medical consultant, Dr. Thomas Thrush, evaluated Plaintiff's medical records on June 18, 2011. Id. at 246. Dr. Thrush's diagnosis was "obesity," secondary diagnosis as "RSD w/ chronic pain," and "other alleged impairments" as "vision." Id. Dr. Thrush's report is otherwise identical to Dr. Pennington's. Id. at 246-252. Plaintiff's claim was then denied upon reconsideration on June 21, 2011.

On June 28, 2012, a hearing was conducted before an Administrative Law Judge, and on

5

August 17, 2012, the ALJ denied Plaintiff's claim. Id. Plaintiff requested a review, and review was denied on October 24, 2013. Id.

### B. Conclusions of Law

The Social Security Act defines "disability" as an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1); see also 42 U.S.C. § 1382c(a)(3). Judicial review is limited to whether the Commissioner's final decision is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 241 (6th Cir. 2007) (quoting Cutlip v. Sec'y of Health & Human Servs., 25 F.3d 284, 286 (6th Cir. 1994)).

In this action, Plaintiff assigns errors to the ALJ's failures to consider properly Dr. Wilson's opinion and Dr. Fatti's work restrictions, and to pose a complete hypothetical question to the vocational expert.

As to the first error, the ALJ assigned Dr. Wilson's opinion "some weight" to the extent that it was "consistent with the record as a whole and the claimant's determined residual functional capacity." Id. at 19. "However, the sit/stand/walk restrictions, specifically, found in Dr. Wilson's opinion [were] too restrictive and unsupported." Id. Dr. Wilson gave restrictions of sitting for 20 minutes at a time for 5 hours total in a workday, standing for 20 minutes at a time for 3 hours total in a workday, and walking for 10 minutes at a time for 2 hours total in a workday. Id. at 231. In comparison, Dr. Fatti did not list sit/stand restrictions, but did authorize Plaintiff for "sedentary

work." Id. at 200. The medical consultants, Dr. Pennington and Dr. Thrush, limited Plaintiff to 6 hours sitting and 6 hours standing in a normal workday. Id. at 237, 247.

In addition, Dr. Wilson did not state a reason for these restrictive limitations, and in fact noted that Plaintiff had "a normal gait with good cadence," could "tandem walk six steps without difficulty. She could go up on her toes, back on her heels, and balance weight on each foot independently. Her Romberg was negative. Her shoulders had forward extension to 160 degrees bilaterally, full abduction and internal rotation bilaterally, external rotation to 60 degrees on the right, and 50 degrees on the left. The claimant's elbows, wrists, and hands had full ROM and her hips, knees, and ankles had full ROM, bilaterally. There was no joint effusion, no calf tenderness and no swelling or pitting edema." Id. at 20-21. As to the "Sitting/Standing/Walking" portion of his report asking to "[i]dentify the particular medical or clinical findings (i.e., physical exam findings, x-ray findings, laboratory test results, history, and symptoms including pain etc.) which support your assessment or any limitations and why the findings support the assessment," Dr. Wilson did not provide an answer. Id. at 231. Yet, as to the"Lifting/Carrying" and "Use of Hands," Dr. Wilson's report reflects, "arm + shoulder pain - bilaterally" and "arm pain - rsd?" respectively. Id. at 230, 232. Because Dr. Wilson's report did not provide the reasoning for his restrictions, the ALJ did not err in giving Dr. Wilson's opinion only "some weight."

Next, Plaintiff argues that the ALJ did not sufficiently consider the evaluations of Dr. Fatti. The ALJ assigned "little weight" to Dr. Fatti's opinion, "as it is inconsistent with the record as a whole." Id. at 20. In the ALJ's view, Dr. Fatti's evaluations do "not address that the claimant's functional limitations during the relevant period on or after she filed for Supplemental Security Income." Id. Plaintiff's last visit with Dr. Fatti was on July 11, 2006; the amended alleged onset

date of her disability is December 9, 2010. Dr. Fatti's opinions were based on examinations conducted almost four years prior. In comparison, Dr. Wilson, who evaluated Plaintiff on February 22, 2011, also diagnosed Plaintiff as having RSD and noted Plaintiff's "allegation of chronic pain syndrome" and "complaints of pain and numbness in her arms and hands, hurts to bend her elbows. She has pain in her neck and her shoulder blades." Id. at 227. In any event, the ALJ did not err in assigning "little weight" to Dr. Fatti's evaluations that were conducted four years before the onset of disability.

Finally, as to the ALJ's incomplete hypothetical to the vocational expert, Plaintiff contends that the ALJ was too restrictive in stating a restriction for "avoid[ing] vibrations that might effect the upper extremities" when he had previously summarized Plaintiff's restriction as "frequent exposure," and stating a restriction of "frequent reaching" when he had not previously given a reaching restriction. In both instances, Plaintiff contends that the ALJ's hypothetical to the vocational expert was more restrictive than previously stated. Plaintiff also asserts that the ALJ omitted the "frequent feeling" restriction he had originally included.

In a Public Policy Statement, the Social Security Administration addressed "reaching" and "feeling":

> <u>Reaching, handling, fingering, and feeling</u> require progressively finer usage of the upper extremities to perform work-related activities. [...] However, a [vocational expert] would not ordinarily be required where a person has a loss of ability to feel the size, shape, temperature, or texture of an object by the finger-tips, since this is a function required in very few jobs.

SSR 85-15 (1/1/85), 1985 WL 56857. Here, the vocational expert listed "very few jobs" that would require this ability and Plaintiff did not challenge that any of the jobs named by the vocational expert to involve feeling.

For these reasons, the Court concludes that the ALJ's decision is supported by substantial evidence and should be affirmed.

An appropriate Order is filed herewith.

**ENTERED** this the 23rd day of March, 2015.

WILLIAM J. HAYNES, JR.
United States District Judge